NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-894                                         Appeals Court


   COMMONWEALTH  vs.  LISTON G. HENRY (and a companion case[1]).


                        No. 13-P-894.

     Barnstable.     June 3, 2015. - October 2, 2015.

        Present:  Kafker, C.J., Rubin, & Milkey, JJ.


Abuse Prevention.  Alien.  Practice, Criminal, Plea, Assistance
     of counsel, Findings by judge.  Constitutional Law, Plea,
     Assistance of counsel.  Due Process of Law, Plea,
     Assistance of counsel.




     Complaint received and sworn to in the Barnstable Division
of the District Court Department on July 29, 2004.

     A motion to withdraw a guilty plea and for a new trial,
filed on February 28, 2013, was considered by H. Gregory
Williams, J., and a motion for reconsideration was heard by him.

     Complaint received and sworn to in the Barnstable Division
of the District Court Department on March 17, 2005.

     A motion to withdraw a guilty plea and for a new trial,
filed on February 28, 2013, was considered by Joan E. Lynch, J.,
and a motion for reconsideration also was considered by her.

_____

     [1] The companion case involves a second complaint against the
same defendant.  We note that the copy of that complaint in the
record appendix identifies the defendant by the name Henry
Liston.

Maurice A. Reidy, III, for the defendant.
Elizabeth Anne Sweeney, Assistant District Attorney, for the Commonwealth.


KAFKER, C.J.   The defendant, Liston G. Henry, appeals from the denials of his motions to withdraw his 2004 and 2005 guilty pleas to two violations of G. L. c. 209A abuse prevention orders and one count of witness intimidation.  He claims to have received ineffective assistance of counsel regarding the immigration effects of pleading guilty to the charges, as he was not informed that the abuse prevention order violations were deportable offenses and because the defendant, then a lawful permanent resident of the United States, was consequently deported to Jamaica in 2013 and thereby separated from his extended family in the United States.  We vacate the orders denying the defendant's motions to withdraw his pleas and remand for further factual findings on both motions.

1.  Background.  According to the application for the first complaint, on July 29, 2004, Yarmouth police officer Sean Brewer was dispatched to the home of Robin Edwards.  Edwards reported that she had an active restraining order against the defendant, who is her former boy friend and the father of her son.  The restraining order in question, which included a no-contact provision, had been issued from the Probate and Family Court and served in-hand on the defendant the previous day, July 28, 2004.

Edwards informed Officer Brewer that at 9:42 that morning (July 29) she received a telephone call. She stated that when she answered the call, the defendant was on the telephone and yelled at her for taking away his visitation rights with their son, stated that he was going to contact DSS[2] to have them take their son away from her, and concluded that if DSS did not do so then he would, and then "she would get what was coming to her." At that point, Edwards hung up the telephone.

As a result of this incident, a complaint issued from the District Court later that day, charging the defendant with one count of violating an abuse prevention order, in violation of G. L. c. 209A, § 7. Several days later the defendant was arraigned and entered a plea of not guilty. Counsel Phillip Deyoung was appointed on August 30, 2004, and after two continuances, the defendant admitted to sufficient facts on October 27, 2004.[3] The defendant received a continuation without a finding and was put on administrative probation. The docket reflects that during the plea colloquy the judge administered the alien warnings required by G. L. c. 278, § 29D.

---

[2] Now called the Department of Children and Families.

[3] In evaluating immigration consequences, "it remains appropriate to treat an admission to sufficient facts as the equivalent of a plea of guilty," and we do so here. Commonwealth v. Grannum, 457 Mass. 128, 130 n.4 (2010) (citation omitted).

According to the application for the second complaint against the defendant, approximately five months later, on March 12, 2005, at 10:50 P.M., Edwards heard knocking at the rear door of her residence.  She opened the door and the defendant entered the house in violation of another abuse prevention order, which required the defendant to leave and stay away from the premises. Upon entry, the defendant first stated that he had to use the bathroom.  He then went on to tell Edwards that they would start dating again, he would get her a ring, and they would get married.  Edwards asked him to leave and said that her boy friend was upstairs.  The defendant told her he would not exit the house until she made the boy friend leave.  Edwards attempted to call the police, but the defendant grabbed the telephone and pulled the telephone cord from the wall.  Edwards went to the upstairs bedroom and used her cellular telephone (cell phone) to call the police.  After placing the call, Edwards went downstairs with her cell phone, which the defendant attempted to wrestle away from her.  She received two scratches to her right forearm during the struggle.

On March 17, 2005, the District Court issued the second complaint against the defendant, charging him with one count of violating an abuse prevention order, in violation of G. L. c. 209A, § 7, and one count of intimidating a witness, in violation of G. L. c. 268, § 13B.  On April 27, 2005, the

defendant was arraigned, counsel Thomas Rugo was appointed, and the defendant entered pleas of not guilty. Four continuances later, the defendant changed his pleas to guilty on August 31, 2005, in a plea proceeding before a second judge, who imposed probationary sentences. Again, the required statutory alien warnings were provided to the defendant during the plea colloquy.

The defendant is a Jamaican citizen and at the times of both plea proceedings was a lawful permanent resident of the United States. As a consequence of his guilty pleas and convictions, on June 10, 2010, the defendant received a notice to appear in removal proceedings before a United States immigration judge, and was placed in custody on December 4, 2010. The defendant appeared at four master's hearings; three continuances were granted, but on March 1, 2013, he was ordered removed to Jamaica. After appealing the order to the Board of Immigration Appeals and to the United States Court of Appeals for the First Circuit, the defendant was removed on December 19, 2013. The defendant's family members -- including his three children, ages thirty-one, twenty-seven, and ten, and their mothers -- all live in and are citizens of the United States.

Prior to his removal, on February 28, 2013, the defendant filed motions to withdraw his 2004 and 2005 pleas. The motions, identical in each case, were supported by affidavits of the

defendant and Edwards. The defendant's affidavit averred that Edwards had falsified her allegations amid crack cocaine addiction and conflict over their child, that neither of the defendant's plea attorneys asked him if he was a United States citizen or told him he could face deportation for admitting to the charges,[4] and that had he been so advised he instead would have insisted on going to trial. In Edwards's affidavit, she recanted her accusations against the defendant. Edwards stated that she suffers from posttraumatic stress disorder due to abuse from her former husband, and that during the time period in question she was addicted to cocaine. She indicated that she has been sober since June 14, 2010, and wishes to make amends for her false accusations against the defendant, which she fabricated both to prevent the defendant from interfering with her drug use and to retaliate against him for seeing another woman.

Originally the defendant's motions were denied in March of 2013 without a hearing, on the basis that Padilla v. Kentucky, 559 U.S. 356, 366, 373-374 (2010), does not apply retroactively to cases on collateral review in Federal court. See Chaidez v. United States, 133 S. Ct. 1103, 1105, 1111 (2013). (The

---

[4] The defendant stated, "Both lawyers just said if you plead guilty you can get out of jail today, and get right back to work, and everything will be fine."

original rulings were in error, as <u>Padilla</u> does apply retroactively <u>under Massachusetts law</u>. See <u>Commonwealth</u> v. <u>Clarke</u>, 460 Mass. 30, 45 [2011]; <u>Commonwealth</u> v. <u>Sylvain</u>, 466 Mass. 422, 423-424 [2013].) After the defendant's motion to reconsider was denied, the defendant filed a notice of appeal for both the 2004 and 2005 matters on April 29, 2013. We then granted the defendant's motion to stay the appeal on November 25, 2013, to allow him to present in the trial court a renewed motion to reconsider his motions to withdraw his pleas. The renewed motion, filed on February 14, 2014, was supported by additional affidavits, of both plea counsel. According to attorney Deyoung's affidavit, Deyoung's case file for the defendant has been destroyed and Deyoung has no memory of his representation of the defendant regarding the 2004 charge. Similarly, attorney Rugo's affidavit stated that his case file for the defendant has been discarded, and that he has no recollection of any details pertaining to his representation of the defendant on the 2005 charges.

On February 24, 2014, the plea judge on the 2005 case engaged in reconsideration and, reviewing the entire case file but without holding an evidentiary hearing, again denied the motion to withdraw the plea. She ruled as follows:

> "In the context of a guilty plea, the defendant bears the burden of proving that he had an 'available, substantial ground of defence.' <u>Commonwealth</u> v. <u>Saferian</u>, 366 Mass.

89[, 96] (1974). In the instant case, the Commonwealth presented a compelling case in which the defendant entered the victim's home in violation of a restraining order, wrestled one phone away from her when she attempted to call police and followed her upstairs when she tried to use a second cell phone. Police responded to the home shortly after the event. The Court finds that the affidavits signed by the victim, eight years after the event, and the defendant, only after he became the subject of deportation proceedings, lack credibility."

As to the 2004 case, the judge who had taken the plea also undertook reconsideration, and ordered that an evidentiary hearing be scheduled. During this hearing, Deyoung testified that although he had no recollection of his representation of the defendant, his standard practice was that, as the judge found, "whenever he suspected any potential immigration consequences . . . might befall a defendant, he would recommend that that client communicate with an immigration attorney."[5] On June 23, 2014, the judge denied the motion to withdraw the plea as to the 2004 case. He contrasted the immigration effects of violations of G. L. c. 209A abuse prevention orders with those of drug offenses, stating,

"'[T]here undoubtedly will be situations in which the deportation [or other immigration] consequences of a particular plea are unclear or uncertain, and counsel's duty more limited' [than in a drug case where the consequences are clear and certain]. [Commonwealth v.] DeJesus, [468 Mass. 174,] 180 [2014]. This is such a case.

---

[5] Deyoung also testified that it was his practice to read and review the "green sheet" (the tender of plea and waiver of rights form) with the client, including the alien rights warning it contained.

It is difficult to determine that counsel should have done more in 2004 than he did, and therefore difficult to find that counsel's behavior fell 'measurably below that which might be expected from an ordinary fallible lawyer.' [Commonwealth v.] Clarke, [460 Mass.] at 45."

Regarding the prejudice prong of the Saferian standard, the judge stated, "[c]oncluding that any of [the possible means of establishing prejudice described in Commonwealth v. DeJesus, supra at 183], were it necessary to reach them, had been demonstrated would have been a stretch for this Court."

Subsequently we vacated our previous stay, and we now consider the defendant's consolidated appeals from these final orders denying his motions to withdraw his pleas.

2. Discussion. A motion to withdraw a guilty plea is treated as a motion for a new trial. Commonwealth v. DeJesus, 468 Mass. at 178. In accordance with Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001), a motion judge "may grant a new trial at any time if it appears that justice may not have been done." "A motion for a new trial is thus committed to the sound discretion of the judge." Commonwealth v. Scott, 467 Mass. 336, 344 (2014). While the defendant bears the burden of proof on a motion for a new trial, and the motion judge is entitled to discredit affidavits, Commonwealth v. Marinho, 464 Mass. 115, 123 (2013), the motion judge must make "such findings of fact as are necessary to resolve the defendant's allegations

of error of law." Mass.R.Crim.P. 30(b). See Commonwealth v. Grace, 397 Mass. 303, 305 (1986); Commonwealth v. Scott, supra.

The defendant argues that his pleas to the 2004 and 2005 charges should be vacated and he should be granted new trials because (1) he was denied effective assistance of counsel due to the failures of both plea counsel to fully inform him of the immigration consequences of his pleas, (2) his pleas were not knowing and voluntary due to the faulty advice of counsel, and (3) justice was not done as demonstrated by the victim's recantation of her allegations. For the reasons that follow, we conclude that in order to decide the defendant's rule 30(b) motions, the judges were required to make additional findings of fact that were both necessary to resolve the legal issues raised therein and not addressed in the judges' previous fact-finding.

A. Ineffective assistance claims. "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" Padilla v. Kentucky, 559 U.S. at 364 (citation omitted). In order to prevail on his claim of ineffective assistance of counsel, the defendant bears the substantial burden of demonstrating both that (1) the conduct of his counsel fell "measurably below that which might be expected from an ordinary fallible lawyer," and (2) this conduct "likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v.

Saferian, 366 Mass. at 96.  We conclude that a remand is required here on both motions as the fact-finding and legal analysis are incomplete in both decisions, on each prong of the ineffective assistance of counsel test.  See Commonwealth v. Sylvain, 466 Mass. at 439 (remand on prejudice prong).

i.  Performance prong.  The defendant asserts that counsel for both his 2004 and 2005 guilty pleas never asked whether he was a United States citizen or informed him that pleading to the G. L. c. 209A offenses would subject him to mandatory deportation.  In determining whether the defendant met his burden under the performance prong of the Saferian standard, we must first address what level of advice plea counsel were constitutionally required to provide the defendant given the charges against him.

In Padilla v. Kentucky, the United States Supreme Court established that defense counsel must apprise a client of the immigration consequences of a plea when such consequences can be "easily determined" via reference to "succinct, clear, and explicit" statutory language.  559 U.S. at 368.  Here, at the time of the plea proceedings, 8 U.S.C. § 1227(a)(2) (2000) listed the criminal offenses constituting applicable grounds for deportation of aliens such as the defendant.  Included in this list at that time (and since unchanged) were "crime[s] of domestic violence" and certain violations of "protection

orders." 8 U.S.C. § 1227(a)(2)(E)(i), (ii).[6] Specifically as to the latter, "[a]ny alien who at any time after admission is enjoined under a protection order issued by a court and whom the court determines has engaged in conduct that violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued is deportable."[7] 8 U.S.C. § 1227(a)(2)(E)(ii). Such a conviction makes the chance of deportation almost certain, as recently reiterated by the Supreme Judicial Court: "After the 1996 effective date of amendments to the 1952 Immigration and Nationality Act, . . . 'if a noncitizen has committed a removable offense . . . , his removal is practically inevitable,' subject to limited exceptions." Commonwealth v. DeJesus, 468 Mass. at 180, quoting from Padilla v. Kentucky, 559 U.S. at 363-364.

---

[6] Importantly for the practicing bar, we note that as of this writing there has been no change to the operative language of 8 U.S.C. § 1227(a)(2)(E), a provision which was added to the statute by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996.

[7] The statute continues, "For purposes of this clause, the term 'protection order' means any injunction issued for the purpose of preventing violent or threatening acts of domestic violence, including temporary or final orders issued by civil or criminal courts (other than support or child custody orders or provisions) whether obtained by filing an independent action or as a pendente lite order in another proceeding." 8 U.S.C. § 1227(a)(2)(E)(ii).

Each of the defendant's attorneys "could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal" for these violations of the protection orders. Padilla v. Kentucky, supra at 368. As such, "[c]ounsel therefore was obligated to provide to his client, in language that the client could comprehend, the information that presumptively mandatory deportation would have been the legal consequence of pleading guilty. Stated differently, counsel needed to convey that, if Federal authorities apprehended the defendant, deportation would be practically inevitable." Commonwealth v. DeJesus, 468 Mass. at 181.[8]

Concluding that the law regarding the immigration consequences of the defendant's pleas was "succinct and straightforward," Padilla v. Kentucky, 559 U.S. at 369,[9] we turn

---

[8] While, in total, the defendant here pleaded guilty to two counts of violation of an abuse prevention order and one count of intimidation of a witness, the parties' arguments on appeal focus on the abuse prevention order charges. We likewise have largely focused our analysis on these two charges. However, our vacatur of the orders on appeal necessarily includes the plea to witness intimidation, as it is inextricably entwined with the simultaneous plea to one of the abuse prevention order violations.

[9] This conclusion is supported by prevailing professional norms. See Committee for Public Counsel Services Immigration Impact Unit, Immigration Consequences of Massachusetts Criminal Convictions 19 (July 2015) ("[Title] 8 U.S.C. § 1227(a)(2)(E)

next to whether the defendant adequately demonstrated that neither of his defense counsel informed him that his pleas subjected him to mandatory deportation.  To support his claim, the defendant provided affidavits from both attorneys, who stated that they have no recollection regarding the defendant's cases.  Attorney Deyoung did state, both in his affidavit and when testifying at the evidentiary hearing on the defendant's motion, that his customary practice is to read with his clients the waiver of rights language on the tender of plea and waiver of rights form.  This, however, would not have satisfied counsel's affirmative duty to inform the defendant that "deportation would be practically inevitable."  Commonwealth v. DeJesus, supra.  See Commonwealth v. Clarke, 460 Mass. at 33, 48 n.20 ("[T]he receipt of such [alien] warnings is not an adequate substitute for defense counsel's professional obligation to advise her client of the likelihood of specific and dire immigration consequences that might arise from such a plea").  Deyoung also stated that his standard practice was to advise clients that pleas may have immigration consequences and that they should consult an immigration attorney.  This was likewise

provides for the deportation of noncitizens who are convicted of crimes of domestic violence . . . or certain violations of protective orders"), available at https://www.publiccounsel.net/iiu/wp-content/uploads/sites/15/2014/07/IIU-Guide-2015.pdf [http://perma.cc/Y3ML-7PWA] (last visited Sept. 29, 2015).

insufficient where deportation is presumptively mandatory.  See Commonwealth v. Balthazar, 86 Mass. App. Ct. 438, 440-443 (2014).

The judge handling the plea withdrawal motion on the 2004 conviction was under the mistaken impression that the immigration consequences for the violation of the abuse prevention order were uncertain and there was no need to advise the defendant that the violation of the G. L. c. 209A abuse prevention order was a deportable offense pursuant to the applicable Federal statute.  As a result, his factual findings did not address the issue whether the defendant was properly informed that the violation of G. L. c. 209A, § 7, was a deportable offense, and thus, if removal proceedings were commenced, his deportation would be practically inevitable.  Such fact-finding is necessary to resolve the performance prong of the Saferian analysis.

As for the motion to withdraw the 2005 plea, the judge bypassed the performance prong of the Saferian analysis entirely.  Instead she moved directly into an inquiry whether the defendant had a substantial ground of defense, which the judge concluded he did not, finding the defendant's and the victim's affidavits incredible.  We also do not interpret her general finding that the defendant and victim were incredible to address the issue whether the defendant was informed by defense

counsel that the violation of the abuse prevention order was a deportable offense, and that deportation was thus practically certain.  The judge should make such findings expressly on remand.

ii.  Prejudice prong.  "A showing that plea counsel's advice was constitutionally deficient does not alone entitle the defendant to relief, however; the defendant must also demonstrate prejudice."  Commonwealth v. Cano, 87 Mass. App. Ct. 238, 246 (2015).  In the plea context, this requires the defendant to establish that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Commonwealth v. Clarke, 460 Mass. at 47, quoting from Hill v. Lockhart, 474 U.S. 52, 59 (1985).  While the defendant has provided an affidavit to that effect, contrast Commonwealth v. Clarke, supra at 49, he must also "convince the court that a decision to reject the plea bargain would have been rational under the circumstances."  Id. at 47 (citation omitted).  The defendant has three avenues for satisfying this requirement:  he must demonstrate that "(1) he had an 'available, substantial ground of defence,' Commonwealth v. Saferian, [366 Mass.] at 96, that would have been pursued if he had been correctly advised of the dire immigration consequences attendant to accepting the plea bargain; (2) there is a reasonable probability that a different plea bargain

(absent such consequences) could have been negotiated at the time; or (3) the presence of 'special circumstances' that support the conclusion that he placed, or would have placed, particular emphasis on immigration consequences in deciding whether to plead guilty.  Hill [v. Lockhart], supra at 60." Commonwealth v. Clarke, 460 Mass. at 47-48 (footnote omitted).

To bolster his argument, the defendant asserts that (1) the evidence marshalled by the Commonwealth to substantiate the charges against him was not particularly strong, and (2) the defendant's family and history in the United States qualify as special circumstances that would have weighed heavily in the defendant's decision to go to trial if he had been adequately informed of the immigration ramifications of his pleas.[10] Although the affidavits focused on the first rather than the second argument, and both judges were disadvantaged by poor development of the record on whether special circumstances were presented here, we conclude that a remand is nonetheless appropriate, especially given the emphasis by the Supreme Judicial Court on family circumstances in Commonwealth v. DeJesus, 468 Mass. at 184.

---

[10] During the evidentiary hearing on the motion to withdraw the 2004 plea, the defendant's counsel argued that "[the defendant] has two [sic] children.  He has grandchildren in the United States.  And unless they have the money to fly to Jamaica, they are never going to see their father ever again. He can't come back.  I mean -- and they're probably never going to see him."

The judge hearing the defendant's plea withdrawal motion in the 2004 case stated without further elaboration that it "would have been a stretch" to conclude that the defendant had met his burden to demonstrate prejudice. We conclude that more specific and definitive findings are required here, especially given that the defendant's children and grandchildren live in the United States. See Commonwealth v. Sylvain, 466 Mass. at 439. Depending on the defendant's relationships with those children and grandchildren, which is not developed in the record, there may have been special circumstances present that would have justified going to trial. See Commonwealth v. DeJesus, 468 Mass. at 184 ("defendant 'had a lot to lose if he were to be deported' because he had been in the country since he was eleven years old, his family was in Boston, and he had maintained steady employment in the Boston area"). See also Padilla v. Kentucky, 559 U.S. at 368 (for deportable defendant, "right to remain in the United States may be more important to [him] than any potential jail sentence" [citation omitted]). Contrast Commonwealth v. Clarke, 460 Mass. at 48 (defendant primarily concerned with pleading to secure dismissal of more serious charges, regardless of immigration consequences; there was substantial evidence stacked against the defendant, which would not have made a lesser plea possible).

Similar factual development is required for the plea withdrawal motion in the 2005 case. Although the judge stated that the Commonwealth's evidence "presented a compelling case" in support of the defendant's convictions, and that neither the defendant's nor the victim's affidavit was credible, the judge did not address the nature and extent of the defendant's family ties in the United States and thus whether there were special circumstances that would have justified going to trial despite the strong case the judge found against him. See Commonwealth v. DeJesus, supra; Padilla v. Kentucky, supra.

In evaluating whether a defendant has demonstrated prejudice in support of his claim of ineffective assistance, "[e]ach case will, of course, stand on its own facts." Commonwealth v. Clarke, 460 Mass. at 48 n.19. But without findings of fact that address the defendant's specific contentions, particularly regarding special family circumstances, "it is not possible for us to say with any certainty whether the defendant's affidavit is merely self-serving or whether he was sufficiently prejudiced to justify vacating his guilty plea and ordering a new trial." Commonwealth v. Sylvain, 466 Mass. at 439, citing Commonwealth v. Saferian, 366 Mass. at 96 ("[W]hatever the attempted formulation of a standard in general terms, what is required in the actual process of decision of claims of ineffective

assistance of counsel . . . is a discerning examination and appraisal of the specific circumstances of the given case"). Therefore, we remand these matters to the District Court to provide further findings relating to both prongs of the Saferian standard for both motions.

B. Defendant's other claims. The defendant makes two additional claims on appeal: first, that his pleas were not knowingly and voluntarily made, and second, that new trials should be granted in the interest of justice. However, the prospects for these claims largely rise and fall on the facts of the ineffective assistance claims. As such, they cannot be addressed until there are further findings of fact from the motion judges.

3. Conclusion. For the reasons articulated above, we vacate the orders denying the defendant's motions to vacate his guilty pleas and remand the defendant's cases to the District Court with instructions to make further findings relating to the issues of performance by counsel and any prejudice arising therefrom, and, if necessary, to hold additional evidentiary hearings on the defendant's motions for such purposes. See Commonwealth v. Sylvain, 466 Mass. at 439.

So ordered.