# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MANUEL LOPEZ-CASTELLANOS,
                    *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,
                    *Respondent.*

No. 01-71848

Agency No.
A92-428-513

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 11, 2003—Pasadena, California
Submission Withdrawn February 24, 2003
Resubmitted February 16, 2006

Filed February 16, 2006

Before: Betty B. Fletcher and Michael Daly Hawkins,
Circuit Judges, and David C. Bury,* District Judge.

Opinion by Judge B. Fletcher

---

*The Honorable David C. Bury, United States District Judge for the
District of Arizona, sitting by designation.

1751

**COUNSEL**

Steven W. Brown, Encinitas, California, and Peter James Musser, Vista, California, for the appellant.

Susan K. Houser; Carl H. McIntyre, Jr.; and Robert D. McCallum, Jr; U.S. Department of Justice, for the appellee.

**OPINION**

B. FLETCHER, Circuit Judge:

Petitioner-Appellant Manuel Lopez-Castellanos petitions for review of a decision by the Board of Immigration Appeals (BIA) finding him ineligible for relief under Immigration and Nationality Act (INA) § 240A(b), 8 U.S.C. § 1229b. We deny relief.

## I.

Lopez-Castellanos entered the United States illegally in 1978 and has resided here continuously since that time. On October 21, 1988, he pled guilty to one count of lewd or lascivious acts with a child under the age of 14, in violation of California Penal Code § 288(a).

At the time of his conviction, this act was not considered an "aggravated felony" under the immigration laws.[1] Moreover, the conviction had no bearing on Lopez-Castellanos's eligibility for a discretionary waiver of deportation. However, several new immigration provisions enacted after Lopez-Castellanos's conviction changed this scenario, and the Government, which instituted removal proceedings after the passage of those provisions, argues that Lopez-Castellanos is ineligible for relief. Although we disagree with much of the Government's analysis, we deny relief on other grounds.

## II.

The agency instituted removal proceedings on December 13, 1999. Shortly thereafter, Lopez-Castellanos conceded removability before an immigration judge (IJ) but requested cancellation of removal or, in the alternative, voluntary departure. The IJ issued an oral decision on May 17, 2000, finding that Lopez-Castellanos was ineligible for either cancellation of removal or voluntary departure. That decision was appealed to the BIA, which affirmed the decision denying cancellation of removal but reversed the voluntary-departure holding. Lopez-Castellanos appealed that ruling to this court, and oral arguments were heard on February 11, 2003. Because, at that time, Lopez-Castellanos's voluntary-departure petition was still pending before the agency, we withdrew submission pending the outcome of that review. On

---

[1] He was sentenced to one day of incarceration and three years of probation.

November 17, 2005, the IJ denied Lopez-Castellanos's application for voluntary departure, and he did not appeal. Consequently, we consider solely the question concerning Lopez-Castellanos's eligibility for a discretionary waiver of deportation.

### III.

The IJ's May 17, 2000 decision dismissed Lopez-Castellanos's application for a discretionary waiver on three separate grounds. First, the IJ pointed out that Lopez-Castellanos's prior conviction for a lewd and lascivious act with a child under the age of 14 under California Penal Code § 288(a) fell under the definition of "aggravated felony" in INA § 101(a)(43)(A). Consequently, the IJ found Lopez-Castellanos ineligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1) because of his conviction for an offense listed under 8 U.S.C. § 1227(a)(2).

Second, the IJ found that Lopez-Castellanos could not meet his burden of proving good moral character because of that prior conviction. As the IJ noted, "Although the conviction occurred more than ten years ago, I do find that the respondent is unable to prove that he is a person of good moral character because he has been convicted of this aggravated felony."

Third, the IJ noted the statutory bar of 8 U.S.C. § 1101(f), which would purportedly render Lopez-Castellanos ineligible for a discretionary waiver as well. As the IJ stated, "Section 1101(f)(8) of the [INA] states that no person can be considered to be a person of good moral character if that person has, at any time, been convicted of an aggravated felony."

The BIA affirmed the determination regarding cancellation of removal but reversed on voluntary departure.[2] With respect

---

[2] The IJ had employed the same reasoning under 8 U.S.C. § 1101(f)(8) to deny Lopez-Castellanos voluntary-departure relief. The IJ revisited that issue and again denied relief, presumably on discretionary grounds, and Lopez-Castellanos has not appealed.

to cancellation of removal, the BIA endorsed only the IJ's first rationale — namely, that Lopez-Castellanos's 1988 conviction fell under the list of enumerated offenses barring cancellation-of-removal relief. The BIA rejected the argument that Lopez Castellanos was eligible for discretionary relief under the previous suspension-of-deportation statute.

## A.

**[1]** 8 U.S.C. § 1101(f)(8) precludes a finding of good moral character for anyone convicted of an "aggravated felony." That section provides, "No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is or was . . . one who at any time has been convicted of an aggravated felony." 8 U.S.C. § 1101(f)(8).

**[2]** Before November 29, 1990, a conviction for an aggravated felony related only to noncitizens convicted of murder. The Immigration Act of 1990 amended INA § 101(f)(8) by substituting the phrase "aggravated felony" for "crime of murder." *See* 8 U.S.C. § 1101(f)(8), *as amended by* Pub. L. No. 101-649, § 509, 104 Stat. 4978, 5051. This amendment took effect on the date of the enactment of the Immigration Act of 1990 (November 29, 1990) and applies to convictions on or after that date. In *United States v. Hovsepian*, 359 F.3d 1144, 1165-69 (9th Cir. 2004) (en banc), this court made it clear that "Congress explicitly limited the reach of § 1101(f)(8) to conduct occurring after November 29, 1990, the effective date of the statute."[3] Thus, 8 U.S.C. § 1101(f)(8) would not appear to

---

[3]There is an exception to this rule solely in cases of pre-1990-Act murder convictions. In those cases, the prior conviction precludes a finding of good moral character, regardless of the date of the conviction. The Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub. L. No. 102-232, § 306(a)(7), 105 Stat. 1733, amended section 509(b) of the 1990 Act, making a murder conviction a bar to good moral character, regardless of the date of the conviction. *Accord Castiglia v. INS*, 108 F.3d 1101, 1103-04 (applying 8 U.S.C. § 1101(f) to a pre-1990-Act murder conviction).

apply to Lopez-Castellanos because his conviction took place before that time.[4]

## B.

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) eliminated a certain form of relief known as "suspension of deportation" for individuals like Lopez-Castellanos. IIRIRA eliminated suspension of deportation and replaced it with a similar (though somewhat more burdensome) kind of relief known as "cancellation of removal."

Before the passage of IIRIRA, the Attorney General could "suspend" deportation of a deportable alien who could prove (1) continuous physical presence within the United States for a period of not less than seven years immediately preceding the date of the application; (2) that s/he was and is a person of good moral character during that period; and (3) that s/he is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence. *See* INA § 244(a)(1), 8 U.S.C. § 1254(a)(1) (repealed 1996).

**[3]** IIRIRA § 304(a)(3) repealed suspension-of-deportation relief and essentially replaced it with a form of cancellation-of-removal relief, codified at 8 U.S.C. § 1229b(b). Under this provision, the Attorney General (or his designated representative) can "cancel removal" of a nonpermanent resident alien — defined as "an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States," *see* 8 U.S.C. § 1229b(b)(1) — who establishes (1) continuous physical presence within the United States for

---

[4]The BIA essentially agreed with that conclusion when it reversed the IJ's holding that § 1101(f)(8) rendered Lopez-Castellanos statutorily ineligible for voluntary departure.

a period of not less than 10 years immediately preceding the date of such application; (2) that s/he has been a person of good moral character during such period; (3) that s/he has not been convicted of certain specified offenses (which includes, among other things, aggravated felonies); (4) that removal would result in exceptional and extremely unusual hardship to the respondent's spouse, parent, or child who is a citizen of the United States or an alien lawfully admitted for permanent residence; and (5) that s/he deserves the remedy in an exercise of discretion.

Removal proceedings were not initiated until after IIRIRA became effective, and the parties dispute the form of discretionary relief — suspension of deportation or cancellation of removal — applicable to Lopez-Castellanos. The difference is important because, under the newer statute, Lopez-Castellanos would be ineligible for relief due to his previous aggravated felony, *see* 8 U.S.C. § 1229b(b)(1)(c)). Thus, Lopez-Castellanos argues that he remains eligible for a discretionary waiver under the pre-IIRIRA law applicable at the time of his conviction.

### IV.

**[4]** At the time of Lopez-Castellanos's conviction, the list of aggravated felonies under the INA did not include lewd and lascivious acts with a child. IIRIRA broadened the list of aggravated felonies to include "murder, rape, or sexual abuse of a minor." 8 U.S.C. § 1101(a)(43)(A). Although Lopez-Castellanos would not have been considered an aggravated felon at the time of his conviction, it is settled law that the effective-date provision of the *definitional* statute, IIRIRA § 321, which defines certain crimes as aggravated felonies, applies *regardless* of the date of the commission of the crime. On that *definitional* issue, our law is clear. *See Aragon-Ayon v. INS*, 206 F.3d 847, 853 (9th Cir. 2000). *See also INS v. St. Cyr*, 533 U.S. 289, 319 (2001) ("IIRIRA's amendment of the definition of 'aggravated felony' . . . clearly states that it

applies with respect to 'conviction[s] . . . entered before, on, or after' the statute's enactment date."). Lopez-Castellanos's conviction meets the definition of an aggravated felony, and the question whether the substantive immigration consequences of IIRIRA apply to him is controlled by *St. Cyr.*

## A.

**[5]** In *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Supreme Court established a two-part test to determine whether a statute should have retroactive effect:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

511 U.S. at 280.[5] Under this two-part test, a court must first analyze whether Congress has clearly prescribed the retroactive effect of a given statute. *Id*. at 250-63. In the absence of such legislative intent, the Court presumes that the statute has only prospective application. *Id.* at 280-86.

---

[5]*See also id.* at 269-70 ("[T]he court must ask whether the new provision attaches new legal consequences to events completed before its enactment . . . . [F]amiliar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.").

**[6]** In *St. Cyr*, the Court applied *Landgraf* analysis in a scenario quite similar to the one raised here. The petitioner, Enrico St. Cyr, had pleaded guilty to selling a controlled substance and had entered into a plea prior to the passage of IIRIRA. The INS instituted removal proceedings after IIRIRA had taken effect, and thus the Attorney General took the position that § 212(c)) relief was no longer available. The Court held that IIRIRA § 304(b) (the provision that repealed § 212(c)) and replaced it with the narrower form of relief available in 8 U.S.C. § 1229b) could not be applied retroactively to bar St. Cyr from applying for cancellation of removal because, first, Congress had not expressed a clear statement that the statute have retroactive effect, and, second, making § 304(b) retroactive would upset the likely expectations informing St. Cyr's decision to enter into the plea bargain in the first place. 533 U.S. at 314-26.

**[7]** *St. Cyr* applies to Lopez-Castellanos's situation, first, because it establishes the lack of any clear statement that IIRIRA's cancellation of removal statute be applied retroactively. *St. Cyr*, 533 U.S. at 317-20. To deprive Lopez-Castellanos of eligibility for discretionary relief would produce an impermissible retroactive effect for aliens who, like Lopez-Castellanos, were eligible for a discretionary waiver at the time of the plea. *See id.* at 326. Applying IIRIRA retroactively would "attach[ ] a new disability, in respect to transactions or considerations already past." *Landgraf*, 511 U.S. at 269.

## B.

**[8]** The BIA distinguished *St. Cyr* on grounds that Lopez-Castellanos, "as an alien without lawful status in this country . . . could hardly have had any settled expectation that he would not be deported from this country should he engage in criminal conduct." However, Lopez-Castellanos's status as a deportable alien does not in and of itself affect his ability to apply for cancellation of removal. The statute plainly *includes*

illegal aliens — "an alien who is inadmissible or deportable from the United States," *see* 8 U.S.C. § 1229b(b)(1) — and thus one's status as a deportable alien simply does not resolve the question whether s/he is eligible for cancellation of removal. Lopez-Castellanos's illegal status has no bearing on any settled expectations he might have had with respect to his ability to seek relief from deportation, once deportation proceedings commenced. That relief remained available at the time he entered his plea, and thus it cannot be taken away on the sole ground of his eligibility for deportation.

Of course, mere *eligibility* for cancellation of removal does not require that such relief be granted. And, crucial to this case, the IJ denied relief on a discretionary ground we cannot review.

## V.

**[9]** As previously explained, the IJ determined, as a second basis for rejecting the application, that Lopez-Castellanos's aggravated-felony conviction precluded him from demonstrating good moral character, a necessary predicate to relief. 8 U.S.C. § 1229b(b). We are bound by that discretionary determination, which is insulated from federal review. *See Moran v. Ashcroft*, 395 F.3d 1089, 1091 (9th Cir. 2005) (indicating that a good moral character determination is only reviewable where it is based on one of the statutory exclusions found in 8 U.S.C. § 1101(f)). Because we lack jurisdiction to consider that discretionary determination, we deny relief.

**PETITION FOR REVIEW DENIED.**