Salinger, KenNeth W., J.
Tuan Van Nguyen pleaded guilty in December 1990 to three indictments charging him with assault with intent to rape, indecent assault and battery, and assault and battery of a 20-year-old woman. Nguyen and the Commonwealth asked the judge to impose probation with no incarceration on the first two charges — structured as a sentence of three to five years in prison, with execution suspended for two years, during which time Nguyen would be on probation — and to place the last charge on file after accepting the change of plea. Judge Walter Steele accepted the guilty plea and imposed the agreed-upon disposition.
Nguyen now seeks to withdraw his guilty pleas on the ground that his lawyer provided inaccurate advice regarding the immigration consequences of this plea, and that as a result Nguyen was deprived of his rights to adequate counsel under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts .Declaration of Rights. Nguyen asserts that his lawyer incorrectly told him that a guilty plea resulting in this sentence would not affect Nguyen’s immigration status or impair his future ability to become a lawful permanent resident or a naturalized citizen of the United States. At oral argument Nguyen represented that federal officials are in the process of seeking his removal from the United States because of his 1990 guilty plea and suspended sentence. This motion could not be referred to Judge Steele because he retired in 1996 and died in 2005.
The Court will DENY Nguyen’s motion for a new trial because it concludes that the immigration advice by Nguyen’s trial counsel was accurate when given and that justice was done when Nguyen’s guilty plea was accepted. The suspended sentence agreed to by Nguyen turned out to have possible adverse immigration consequences because of subsequent changes to federal immigration law that were enacted in 1996, took effect in 1997, and apply retroactively to prior guilty pleas or convictions. The failure of Nguyen’s lawyer to anticipate such a statutory change was not ineffective assistance of counsel, however. Nor has Nguyen proved that his lawyer failed to discover facts that would have strengthened his defense and given him further reason not to plead guilty. And Nguyen has not shown that his guilty pleas were legally defective for any other reason. The Court may not vacate a twenty-five-year-old guilty plea that was not tainted by any constitutional or other legal error in order to help the defendant escape the effects of policy choices made by a later Congress, avoid removal from this country, and regain eligibility to become a naturalized citizen or permanent resident of the United States.
1. Legal Standards
The Court will treat Nguyen’s motion as seeking a new trial even though Nguyen also asks the Court to dismiss the charges. See Commonwealth v. Cotto, 471 Mass. 97, 105 (2015) (motion to withdraw guilty plea is treated as motion for new trial); Commonwealth v. Miozza, 67 Mass.App.Ct. 567, 573, rev. denied, 447 Mass. 1114 (2006) (post-conviction motion for mistrial or dismissal treated as new trial motion). “Amotion for a new trial pursuant to Mass.R.Crim.P. 30(b) is the proper vehicle by which to seek to vacate a guilty plea.” Commonwealth v. Scott, 467 Mass. 336, 344 (2014). Such a motion “is addressed to the sound discretion of the trial judge.” Commonwealth v. Furr, 454 Mass. 101, 106 (2009), quoting Commonwealth v. Russin, 420 Mass. 309, 318 (1995). “A judge may grant the defendant’s motion” for a new trial “only ‘if it appears that justice may not have been done.’ ” Id., quoting Rule 30(b). “Justice is not done if the defendant has received ineffective assistance of counsel in deciding to plead guilty.” Commonwealth v. Gordon, 82 Mass.App.Ct. 389, 394 (2012).
*696 Nguyen bears the burden of proving that he did not receive constitutionally adequate assistance of counsel because his lawyer “failed adequately to advise [him] of the immigration consequences of his pleas,” that he suffered real prejudice or harm as a result, and that he should therefore be able to withdraw his guilty pleas. Commonwealth v. Balthazar, 86 Mass.App.Ct. 438, 440 (2014). Applying the Sixth Amendment, the Supreme Court has “articulated the two steps required for establishing ineffective assistance of counsel [as follows]: ‘First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the ’’counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.’ “ Commonwealth v. Clarke, 460 Mass. 30, 37 (2011), quoting Strickland v. Washington, 466 U.S. 668, 687 (1984). The standard that applies under art. 12 is essentially the same. Commonwealth v. Valentin, 470 Mass. 186, 189-90 (2014). ”[T]o prevail on a claim of ineffective assistance of counsel in Massachusetts . .. [t]he defendant must show that counsel’s performance fell ‘measurably below that which might be expected from an ordinary fallible lawyer,’ “ and that the defendant suffered some real prejudice as a result. Commonwealth v. Marinho, 464 Mass. 115, 123 (2013), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). ”[S]atisfying the Saferian standard necessarily satisfies the Strickland standard." Commonwealth v. Sylvain, 466 Mass. 422, 427 n.5 (2013).
“In the context of a guilly plea,” as in this case, “in order to satisfy the ‘prejudice’ requirement, the defendant has the burden of establishing not only that ’’there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial," but also that “a decision to reject the plea bargain would have been rational under the circumstances.” Clarke, supra, at 47, quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985) (“reasonable probability ... he would not have pleaded guilty”), and Padilla v. Kentucky, 559 U.S. 356, 372 (2010) (“would have been rational under the circumstances”). ‘To prove the latter proposition, the defendant bears the substantial burden of showing that (1) he had an ‘available, substantial ground of defense’ that would have been pursued if he had been correctly advised of the dire immigration consequences attendant to accepting the plea bargain; (2) there is a reasonable probability that a different plea bargain (absent such consequences) could have been negotiated at the time; or (3) the presence of ‘special circumstances’ that support the conclusion that he placed, or would have placed, particular emphasis on immigration consequences in deciding whether to plead guilty.” Clarke, supra, at 47, quoting Saferian, supra, at 96 (“available, substantial ground of defense”), and Hill, supra, at 60 (“special circumstances”). This last factor reflects the fact that a noncitizen defendant who is considering “the apparent benefits of a plea offer . . . confronts a very different calculus than that confronting a United States citizen. For a noncitizen defendant, preserving his ‘right to remain in the United States maybe more important to the client than any potential jail sentence.’ ” Commonwealth v. DeJesus, 468 Mass. 174, 184 (2014), quoting Padilla, supra, at 368, and I.N.S. v. St. Cyr, 533 U.S. 289, 322 (2001). ‘Thus, a determination whether it would be rational for a defendant to reject a plea offer ‘must take into account the particular circumstances informing the defendant’s desire to remain in the United States.’ ” DeJesus, supra, quoting People v. Picca, 97 A.D.3d 170, 183-84, 947 N.Y.S.2d 120 (N.Y. 2012).
2. Evidence and Factual Findings
2.1. No Evidentiary Hearing
After hearing oral argument by counsel for both sides, the Court exercises its discretion to decide Nguyen’s motion without conducting an evidentiary hearing because the motion raises no substantial issue that requires further fact finding and neither Nguyen nor the Commonwealth has shown that an evidentiary hearing would “add anything to the information that has been presented in the motion and affidavits.” Commonwealth v. Goodreau, 442 Mass. 341, 348-49 (2004); accord Mass.R.Crim.P. 30(c). No evidentiary hearing is warranted because Nguyen’s motion is without merit even assuming that the facts submitted in support of his motion — as distinguished from the legal conclusions that Nguyen asks the Court to draw from those facts—are all true and credible. See Commonwealth v. Buckman, 461 Mass. 24, 44 (2011) (affirming denial of evidentiary hearing on this ground); accord Commonwealth v. Ortiz, 67 Mass.App.Ct. 349, 361, rev. denied, 447 Mass. 1112 (2006) (“If the theory of the motion, as presented by the papers, is not credible or not persuasive, holding an evidentiary hearing to have the witnesses repeat the same evidence . .. will accomplish nothing.” (quoting Goodreau, 442 Mass. at 348-49)).
Furthermore, no evidentiary hearing is needed because the material facts are not in dispute. See Gordon, 82 Mass.App.Ct. at 395. Nguyen does not dispute that: (i) the Commonwealth would have been able to present a case at trial consistent with the summary of evidence contained in the “statement of the case” filed by the Commonwealth in July 1990; (ii) Nguyen submitted the document titled “Defendant’s Sentencing Memorandum” in support of the parties’joint sentencing recommendation; or (iii) the disposition that was jointly recommended by the Commonwealth and Nguyen and adopted by the sentencing judge was obtained by Nguyen’s counsel through active plea negotiations. The Commonwealth, in turn, does not dispute that: (iv) before pleading guilty, Nguyen was told by his lawyer that if Nguyen pleaded guilty and *697 received a term of probation and no incarceration then his plea would not result in any adverse immigration consequences and would have no adverse implications for his current or future immigration status; (v) Nguyen was a decorated veteran of the Army of the Republic of Vietnam (the South Vietnamese Army); and (vi) Nguyen fled his homeland after South Vietnam was defeated by the People’s Army of Vietnam (the North Vietnamese Army) and North and South Vietnam were reunified under communist rule. The Commonwealth does ask the Court to reject Nguyen’s assertion that he would not have pleaded guilty if his lawyer had advised Nguyen that doing so could lead to Nguyen being deported or being unable to become a lawful permanent resident or a naturalized citizen of the United States. The Commonwealth argues that this assertion is “self-serving” and not supported by any affidavit from Nguyen’s prior attorney. But the Commonwealth does not suggest that the underlying facts are in dispute. Nor has it asked to question Nguyen or his prior counsel under oath.
2.2. Findings of Fact
The Court makes the following findings based on the affidavits and exhibits submitted by the parties and on reasonable inferences that the Court has drawn from that evidence. A judge may decide a motion to withdraw a guilty plea under Mass.R.Crim.P. 30(b) “based solely on the submitted affidavits,” and choose to believe or disbelieve undisputed affidavits without first conducting an eviden-tiary hearing. Furr, 454 Mass. at 106.
In connection with Nguyen’s changes of plea to “guilty,” the Commonwealth was prepared to present the following evidence at trial. The three indictments against Nguyen concerned events that occurred on April 28-29, 1990. At that time Nguyen was 38 years old. He was friendly with the victim, a 20-year-old woman attending college in Boston, and with her mother and cousin. Nguyen and the victim spent much of the day together around town on April 28. They then went to Nguyen’s home in Waltham, where he rented a room in a single-family house. Nguyen made them both dinner. The victim decided to spend the night. She understood that she would sleep in Nguyen’s bed and he would sleep on a couch in the downstairs living room. The victim went to sleep around midnight, wearing Nguyen’s pajama top and her own underwear. About an hour later the victim awoke to find Nguyen in bed with her. Nguyen began to remove the victim’s clothing and to kiss and fondle her breasts. The victim told him to stop, several times, and demanded that he leave the bedroom. Nguyen did not do so. Instead, Nguyen pulled off the victim’s panties, took off his own underwear, and tried to penetrate her vagina using his penis. The victim struggled and screamed for him to stop. Nguyen’s landlord heard the screaming, knocked on the bedroom door, and asked what was going on. At that point the victim called out for help and ran from the room. The next morning the victim went to her college health center and reported that she had been sexually attacked. She later met with police officers and went to a hospital for a physical examination. A police officer observed and photographed bruises on the victim’s breast and thigh and marks on her arms and face.
Nguyen was subsequently indicted for three crimes arising out of this incident: assault with intent to rape in violation of G.L.c. 265, §24, and indecent assault and battery on a person aged fourteen or older in violation of G.L.c. 265, §13H (both felonies, with possible state prison sentences), plus simple assault and battery in violation of G.L.c. 265, §13A (a misdemeanor).
Nguyen’s attorney, Kevin P. O’Malley, was able to negotiate a plea agreement that would save Nguyen from having to serve any time in prison so long as he successfully completed a probationary period. After negotiations, the Commonwealth agreed that if Nguyen were to plead guilty to all three indictments then the Commonwealth would join in recommending that Nguyen be given a suspended sentence of three to five years in prison for the two felonies, that the sentence be suspended for a two-year probationary period, and that the charge of assault and battery be placed on file.
The Court finds that Nguyen placed particular emphasis on immigration consequences in deciding whether to plead guilty, because of his special circumstances. Nguyen was a decorated veteran of the Army of the Republic of Vietnam (the South Vietnamese Army). He fled his homeland after South Vietnam was defeated by the People’s Army of Vietnam (the North Vietnamese Army) and North and South Vietnam were reunified under communist rule.
Attorney O’Malley advised Nguyen that if he were to plead guilty in exchange for an agreed-upon disposition of probation with no actual incarceration then there would be no adverse effect on his immigration status or on his future ability to seek and obtain permanent residency in this country or to become a naturalized citizen of the United States. Nguyen’s sworn testimony that his lawyer gave him such advice is credible because, as explained below, such advice was accurate based on federal immigration law in effect at the time.
Nguyen decided to enter into the oral plea agreement and to plead guilty to these three indictments. When Nguyen pleaded guilty he did so in part in reasonable reliance on his attorney’s advice regarding the immigration consequences of doing so and accepting a suspended sentence and probation. Nguyen also submitted a sentencing memorandum in which he again conceded that there was an adequate factual basis for the charges against him. Nguyen admitted in this memorandum that on the evening in question he got into bed with the victim and began to kiss her and *698 fondle her breast, he then realized that the victim was asleep and that she woke up only because Nguyen was caressing her in a sexual manner, that the victim “became very upset and started to scream,” and that Nguyen tried to overcome the victim’s resistance and “tried to force himself’ on the victim while “holding her down.” Nguyen further admitted that he did not stop trying to “force himself’ on the victim until she continued screaming for help and the homeowner began to bang on the bedroom door. Nguyen concluded his sentencing memorandum by stating that he “greatly regrets his actions on the night in question” and by apologizing to the victim and her family.
The sentencing judge accepted Nguyen’s guilty plea and imposed the jointly recommended disposition by sentencing Nguyen to three to five years in state prison on the two felonies of assault with intent to rape and indecent assault and battery, suspending that sentence for two years and placing Nguyen on probation during that period, and placing the misdemeanor charge of assault and battery on file.
3. Rulings of Law
3.1. Duty to Advise of Immigration Consequences
Nguyen’s lawyer had an obligation to give Nguyen accurate advice about the immigration consequences of pleading guilty and accepting a suspended sentence with probation. The Commonwealth’s suggestion that lawyers were not required as of December 1990 to provide accurate immigration advice to clients facing criminal charges in Massachusetts state courts is incorrect. Although the Sixth Amendment requirement that defense counsel provide such immigration advice only applies (in Massachusetts) to guilly pleas obtained after April 1, 1997, that is not the end of the matter. As explained below, the Supreme Judicial Court has held that art. 12 of the Massachusetts Declaration of Rights imposes the same requirement, and that under art. 12 ordinary fallible defense counsel in Massachusetts have had an obligation to provide such immigration advice at least since 1988.
Nguyen did not have a Sixth Amendment right to accurate immigration advice from his lawyer in 1990. The Sixth Amendment right of criminal defendants to accurate immigration advice from their lawyer was first recognized by the United States Supreme Court in Padilla v. Kentucky, 559 U.S. 356 (2010), which “held that defense counsel’s failure to advise a client that a consequence of his guilty plea likely would be deportation constituted ineffective assistance of counsel.” Clarke, 460 Mass. at 31. In 2011, the SJC determined “that the holding in Padilla is to be applied retroactively to criminal convictions obtained after . . . April 1, 1997,” which was the effective date of the federal Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-08, 110 Stat. 3009-46 (1996). Id. at 45. After Clarke, the Supreme Court held that Padilla announced a new rule and thus under Federal law does not apply retroactively to collateral challenges of criminal convictions in which no direct appeal was pending' at the time Padilla was decided. See Chaidez v. United States, 133 S.Ct. 1103, 1105 & 1111 (2013). Thereafter, the SJC held that as a matter of Massachusetts law the rule announced in Padilla will continue to apply retroactively to collateral review of criminal convictions obtained after April 1,.. 1997. See Sylvain, 466 Mass. at 423-24. Nguyen cannot invoke any Sixth Amendment right under Padilla because he pleaded guilty in December 1990.
At the time that Nguyen pleaded guilty, however, his right to accurate immigration advice was guaranteed by art. 12 of the Massachusetts Declaration of Rights, even though it was not yet guaranteed by the Sixth Amendment. “(U]nder art. 12 defense counsel must accurately advise a noncitizen client of the deportation [and other immigration] consequences of a guilty plea or a conviction at trial.” Sylvain, supra, at 436. And “given the magnitude of the consequence to noncitizen defendants who plead guilty or are convicted at trial, tenets of fundamental fairness require that this right apply retroactively,” which means that defendants like Nguyen may seek a new trial on the ground that their lawyer provided ineffective assistance by providing inaccurate immigration advice regarding the consequences of a guilty plea. Id. at 437. In Massachusetts, “professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client’s plea” since 1988, when the Committee for Public Counsel Services began requiring all of its staff attorneys and bar advocates to do so. Clarke, 460 Mass. at 43 & n. 15, quoting Padilla, 559 U.S. at 372; accord Sylvain, 466 Mass. at 437. It appears that this norm arose after Congress for the first time provided that certain “aggravated felons” were subject to deportation. The Anti-Drug Abuse Act of 1988 provided that aliens convicted after November 18, 1988, of murder, drug trafficking, or trafficking in firearms or destructive devices were subject to deportation. See Pub. L. No. 100-690, 102 Stat. 4181, §§7342, 7344, codified at 8 U.S.C. §1101(a)(43); Sousa v. I.N.S., 226 F.3d 28, 32-33 (1st Cir. 2000). (This amendment did not apply to Nguyen because he pleaded guilly in December 1990 and he did not commit any of the crimes that originally were treated as “aggravated felonies” under federal immigration law.)
In sum, Nguyen would be entitled to a new trial if he could prove that his lawyer gave him materially inaccurate advice regarding the immigration consequences of pleading guilty and accepting a suspended sentence and probation, and that he was prejudiced as a result.
3.2. Accuracy of Immigration Advice
Nguyen’s motion for a new trial nonetheless fails because the advice that Nguyen received from his lawyer regarding the potential immigration consequences of his guilty plea was accurate. Nguyen says *699 his lawyer assured him that if he pleaded guilty and was given a suspended sentence and probation, with no committed time, that would not adversely affect his immigration status or eligibility to become a lawful permanent resident or a naturalized citizen of the United States. As explained below, that advice was a correct summary of federal immigration law as of December 1990.
3.2.1. Basis of Guidance Given to Nguyen
It appears that Attorney O’Malley’s advice regarding the difference between a guilty plea that results in probation and a suspended sentence and a conviction leading to incarceration was based in part on the then-existing statutory requirement of “good moral character” as a condition for obtaining lawful permanent residence in this country or becoming a naturalized citizen of the United States. It may have also been based in part on the then-existing immigration law providing that aliens could be deported if they commit crimes involving “moral turpitude” and are sentenced to confinement or are in fact confined (for example, after violating conditions of probation) for that crime.
If Nguyen had been convicted at trial or pleaded guilty and as a result confined in jail or prison for at least one hundred eighty days, then he would no longer have been eligible for permanent residence or naturalization. In order to qualify for an adjustment of immigration status “to that of an alien lawfully admitted for permanent residence,” an alien must demonstrate that he, among other things, “is a person of good moral character.” 8 U.S.C. §1255b(b). Similarly, by law “no person . . . shall be naturalized unless" he, among other things, “has been and still is a person of good moral character” during the statutorily defined period of residency, which is currently five years. 8 U.S.C. §1427(a)(3). The “good moral character” conditions for permanent residence status and for naturalization were both in place at the time that Nguyen pleaded guilty in 1990. See, e.g., I.N.S. v. Phinpathya, 464 U.S. 183, 201 (1984) (permanent residence); Nyquist v. Mauclet, 432 U.S. 1, 18 (1977) (naturalization). By law, aliens may not be considered to be of good moral character “during the period for which good moral character is required to be established” if “during such period” they have “been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless ofwhether the offense, or offenses, for which he has been confined were committed within or without such period.” 8 U.S.C. §1101(i)(7). This provision was enacted as part of the Immigration and Nationality Act of 1952, long before Nguyen entered his guilty pleas. See Pub. L. 82-414, 66 Stat. 163, 172, g 101 (f)(7) (1952), codified at 8 U.S.C. §1101(f)(7).
Nguyen’s lawyer may also have been concerned that if Nguyen were convicted at trial and then sentenced to prison for at least one year, with no suspension of sentence, that could put Nguyen at risk of being deported. At that time, the Attorney General could deport any alien who was “convicted of a crime involving moral turpitude committed within five years after entiy [to the United States] and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more[.]” Costello v. Immigration & Naturalization Serv., 376 U.S. 120, 121 n.1 (1964), quoting Section 241(a)(4) of the Immigration and Nationality Act of 1952, codified at 8 U.S.C. §1251(a)(4); accord, e.g., Lozada v. I.N.S., 857 F.2d 10, 11 (1st Cir. 1988). The Massachusetts crimes of indecent assault and battery and of assault with intent to rape both appear to be crimes involving moral turpitude for purposes of federal immigration law. See Maghsoudi v. I.N.S., 181 F.3d 8, 14-15 (1st Cir. 1999) (Massachusetts crime of indecent assault); In re Beato, 10 I.&N. Dec. 730 (B.I.A. 1964) (assault with intent to rape). In his sentencing memorandum, Nguyen stated that he had entered the United States in June 1983. If so, then conviction of these charges in 1990 would probably not have put him at risk of deportation even if he had been incarcerated for ayear or more as a result. But, given the state of federal immigration law in 1990, there was some basis for Attorney O’Malley to tell Nguyen that he would not face deportation if he pleaded guilty and was given a probationary term and not incarcerated as a result.
In sum, Attorney O’Malley’s immigration advice was substantially accurate. Under federal immigration law as of December 1990, the favorable disposition negotiated by O’Malley had no adverse impact on Nguyen’s eligibility for permanent residence or naturalization and did not subject him to deportation for committing a crime involving moral turpitude, because Nguyen was never confined to any penal institution as a result of his guilty pleas.
3.2.2. Inapplicability of 1990 Amendments
Just weeks before Nguyen pleaded guilty, Congress amended the immigration statutes in a manner that could have serious implications for someone who pleads guilty to the same crimes as and receives the same sentence as Nguyen. But those amendments did not apply to crimes committed before November 29, 1990, and thus did not apply to Nguyen because he committed his crimes in April 1990.
In the Immigration Act of 1990, Congress expanded the definition of “aggravated felony” to include “crimes of violence” committed after November 29,1990, “forwhich the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least 5 years[.]” See Pub. L. No. 101-649, 104 Stat. 4978, §501 (a)(3) (1990), codified at 8 U.S.C. §1101(a)(43)(F). At the same time, Congress amended the definition of “good moral character.” Previously, conviction of the crime of murder meant that someone could not be deemed to have good moral character. See Pub. L. 82-414, 66 Stat. 163, 172, § 101(f) (8) (1952), codified at 8 U.S.C. § 1101 (f)(8). In 1990, Congress amended the statute to delete this reference to “crime of murder” and instead provide that an alien convicted of any “aggravated felony,” including but not *700 limited to murder, does not have good moral character. See Pub. L. No. 101-649, 104 Stat. 4978, §509(a) (1990). This amendment also applies only to convictions occurring on or after November 29, 1990. Pub. L. No. 101-649, 104 Stat. 4978, §509(b) (1990); 8 C.F.R. §316.10(b)(1)(ii); Lopez-Castellanos v. Gonzales, 437 F.3d 848, 851 (9th Cir. 2006).
The felonies to which Nguyen pleaded guilty — assault with intent to rape and indecent assault and battery on a person over the age of 14 — fell within the category of “crimes of violence” because by their nature these crimes involve a substantial risk that physical force may be used to overcome the victim’s consent, as actually occurred in this case. See Ramirez v. Mukasey, 520 F.3d 47, 49-50 (1st Cir. 2008) (Massachusetts crime of indecent assault and battery on person age 14 or older is categorically a “crime of violence” under federal immigration law for this reason); Sutherland v. Reno, 228 F.3d 171 (2d Cir. 2000) (same). The term “crime of violence” is defined to mean “(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.” See 18 U.S.C. §16.
But the 1990 amendment nonetheless did not apply to Nguyen, and did not treat his crimes as “aggravated felonies,” at the very least because he committed his crimes before November 29, 1990. See Lopez-Castellanos, 437 F.3d at 851; Souza, 226 F.3d at 33. In addition, at least one United States Court of Appeals has questioned whether a suspended sentence of three to five years, like the one received by Nguyen, would constitute a suspended sentence of “at least 5 years.” Souza, supra.
3.3. Effect of 1996 Amendments
Unfortunately for Nguyen, however, when Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) it expanded the definition of “aggravated felony” and did so retroactively, so that Nguyen would now be treated as an aggravated felon for the purposes of federal immigration law. IIRIRA imposed “new and significantly harsher sanctions on noncitizens as a consequence of even relatively minor criminal convictions.” Commonwealth v. Hilaire, 51 Mass.App.Ct. 818, 823 (2001). Of particular relevance here, “IIRIRA expanded the definition of aggravated felony with respect to crimes of violence by including aliens with sentences of one year or more.” Sousa, supra; accord 8 U.S.C. §1101(a)(43)(F). Furthermore, Congress applied this expanded definition retroactively “to a prior offense even though the charge, when disposed of, was not defined as an ‘aggravated felony,’ so long as it would now fall within the definition of that term.” Hilaire, supra. It did so by specifying that this amended definition of aggravated felony “applies regardless of whether the conviction was entered before, on, or after September 30, 1996,” the effective date of the statute. 8 U.S.C. §1101 (a)(43), last paragraph (as amended by IIRIRA §321(b), 110 Stat. at 3009-628). And the amended definition of “aggravated felony” still applies to crimes of violence for which a defendant receives a suspended sentence, as did Nguyen, rather than actual incarceration. Hilaire, supra. The 1996 amendment “deleted the phrase ‘imposed (regardless of any suspension of such imprisonment),’ in §1101(a)(43) . . .but replaced it with a new §1101(a) (48) (B), applicable to the entire chapter, which provides, ‘Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part.’ ” United States v. Tejeda-Perez, 199 F.3d 981, 982 (8th Cir. 1999). Thus, “[t]he retroactive application of the law to such charges applies whether or not the noncitizen served his previous sentence or punishment and regardless of whether he has a subsequent record of convictions.” Hilaire, supra.
The Court will assume without deciding that, as a result of the retroactive effect of these statutoiy changes, Nguyen is now subject to being forcibly removed from this country and cannot become a naturalized citizen or a lawful permanent resident of the United States, and that he would not now be in this situation if he had been given straight probation without any suspended sentence after pleading guilty in 1990, or if he had not pleaded guilty and been acquitted of all three charges at trial.[1] As discussed above, the felonies to which Nguyen pleaded guilty are “crimes of violence” as that term is defined in federal immigration law. See Ramirez, 520 F.3d at 49-50; 18 U.S.C. §16. And since Nguyen received a suspended sentence in excess of one year in prison those crimes count as “aggravated felonies” for the purpose of federal immigration law. 8 U.S.C. §1101(a)(48)(B). Thus, IIRIRA may expose Nguyen to being deported with no chance of being readmitted to the United States. See 8 U.S.C. § 1228(c) (“An alien convicted of an aggravated felony shall be conclusively presumed to be deportable from the United States”), and § 1182(a)(9)(A)(i) (alien convicted of aggravated felony and removed from country is thereafter “inadmissible”). Furthermore, Nguyen may be ineligible to become either a lawful permanent resident or a naturalized citizen of the United States because he was convicted of an aggravated felony as that term was retroactively redefined in IIRIRA. As discussed above, to become a permanent resident or naturalized citizen an alien must have demonstrated “good moral character” during the relevant time period. 8 U.S.C. §1255b(b) (permanent residency) and §1427(a}(3) (naturalization). Under federal immigration law, however, “(n]o person shall be regarded as, or found to be, a person of good moral character” if he “at any time has been convicted of an aggravated *701 felony.” Id. §1101(f)(8). Nguyen’s acceptance of a suspended sentence and probation in 1990 may therefore bar him from becoming a permanent resident or citizen of this eountiy twenty-five years later.
Whether federal officials can or should apply these 1996 amendments to Nguyen is not an issue for Massachusetts courts to decide. See, e.g., Commonwealth v. Rodriguez, 441 Mass. 1002, 1003-04 (2004) (rescript). The Court notes, however, that at least one United States Court of Appeals has concluded that the retroactive application of this expansion in the definition of “aggravated felony” to people like Nguyen is constitutional, holding that it does not violate the requirements of due process (because it has a rational basis) or constitute ex post facto punishment (because deportation and other adverse immigration consequences are civil matters, not criminal ones). See Kuhali v. Reno, 266 F.3d 93, 111-12 (2d Cir. 2001).
3.4. No Ineffective Assistance of Counsel
3.4.1. Accurate Immigration Advice
The Court nonetheless concludes that Nguyen was not denied the effective assistance of counsel in deciding whether to plead guilty. As discussed above, the immigration advice given to Nguyen was accurate when given in December 1990. Nguyen’s lawyer had no reason to suspect that a future statutory amendment might render the advice inaccurate and cannot be faulted for not doing so. Cf. Commonwealth v. Medeiros, 48 Mass.App.Ct. 374, 376-77 (1999) (“judge had no obligation to anticipate changes in the operation of Federal immigration law” when giving immigration warning during plea colloquy). The Court finds that Nguyen’s trial counsel could not reasonably have foreseen that six years later Congress would change federal law retroactively in a manner that caused Nguyen’s guilty plea and suspended sentence to have possible adverse consequences for his immigration and citizenship status. Since Attorney O’Malley’s advice “did not fall ‘measurably below that which might be expected from an ordinary, fallible lawyer,’ ” he “was not ineffective” and Nguyen is not entitled to a new trial. See Commonwealth v. Morganti, 467 Mass. 96, 97 (2014), quoting Saferian, 366 Mass. at 96.
Nguyen was not denied constitutionally adequate legal representation merely because his lawyer did not anticipate that Congress would dramatically rewrite relevant portions of federal law in 1996. ‘To meet the constitutional requirements of effectiveness, an attorney need not be clairvoyant as to . . . future shifts in the legal landscape.” Commonwealth v. Baran, 74 Mass.App.Ct. 256, 272 n.23 (2009). Whether counsel provided effective assistance “must be measured against that of an ‘ordinary fallible lawyer’ ... at the time of the alleged professional negligence, and not with the advantage of hindsight.” Commonwealth v. Alebord, 467 Mass. 106, 114, cert. denied, 134 S.Ct. 2830 (2014), quoting Commonwealth v. Drew, 447 Mass. 635, 641 (2006), cert. denied, 550 U.S. 943 (2007); accord Strickland, 466 U.S. at 689. A “subsequent change in the law” has no bearing on whether a lawyer provided adequate counsel “under the law that existed at the time of the challenged conduct.” Commonwealth v. Oliveira, 431 Mass. 609, 614 (2000).
3.4.2. Alleged Lack of Factual Investigation
Nguyen also asserts in passing that his trial counsel “conducted no due diligence” and did not investigate the factual basis for the charges against him. But Nguyen presents no evidence that his lawyer failed to unearth exculpatory evidence that could have been discovered by a duly diligent lawyer. Nguyen has therefore not met his burden of proving that a lack of investigation by his lawyer “likely deprived the defendant of an otherwise available, substantial ground of defense.” Commonwealth v. Leng, 463 Mass. 778, 781 (2012), quoting Saferian, 366 Mass. at 96.
Nguyen cannot prevail in seeking a new trial on this ground because he has not made any “showing that better work might have accomplished something material for the defense.” Id., quoting Commonwealth v. Satterfield, 373 Mass. 109, 115 (1977). To the contrary, at oral argument when Nguyen pressed this point, he relied entirely on evidence that had been discussed in Nguyen’s own 1990 sentencing memorandum. As the Court found above, that memorandum confirmed that the Commonwealth’s representation of what the victim would say under oath at trial accurately reflected what happened during the night that Nguyen sexually assaulted the victim.
A decision by trial counsel “to forgo further investigation” of particular facts is a strategic decision that will not constitute ineffective assistance of counsel unless it is shown to have been “ ‘manifestly unreasonable’ when made.” Commonwealth v. Kolenovic, 471 Mass. 664, 674-75 (2015), quoting Commonwealth v. Acevedo, 446 Mass. 435, 442 (2006), and Commonwealth v. Adams, 374 Mass. 722, 728 (1978). In this case, it was perfectly reasonable for Nguyen’s lawyer to accept Nguyen’s own confirmation — as documented in Nguyen’s own sentencing memorandum — that the factual assertions by the victim were true and accurate in all material respects.
3.5. No Other Basis to Vacate Plea
Since Nguyen’s guilty plea was lawfully made and accepted, the Court may not vacate that plea merely to protect Nguyen from being removed from this county or to eliminate an obstacle to Nguyen becoming a lawful permanent resident or naturalized citizen of the United States. ‘That Federal immigration law may work an unfortunate and harsh result is not a basis for vacating admissions or convictions that are otherwise lawful in all respects.” Commonwealth v. Estrada, 69 Mass.App.Ct. 514, 516 (2007) (dictum). Nguyen’s “remedies with respect to any action on a naturalization application that he has submitted, or may choose to submit in the future, lie in the Federal arena, not in *702 challenging the disposition of the underlying State proceedings in this case.” See Rodriguez, 441 Mass. at 1004 (reversing order that revoked pretrial probation in an attempt to aid defendant’s naturalization application).
The Court recognizes that a judge may properly “consider the potential immigration consequences in fashioning a sentence” after a criminal defendant pleads guilty or is convicted at trial. Marinho, 464 Mass. at 128 n. 19. But the principle that a sentencing judge may consider immigration consequences only applies when the judge crafts an appropriate sentence either after a conviction or on a timely motion to revise or revoke a sentence under Mass.R.Crim.P. 29(a).
The Court may not treat Nguyen’s motion as a request to revise or revoke his sentence because, under Rule 29(a), any such motion had to be filed within sixty days after sentence was imposed. Commonwealth v. Simmons, 448 Mass. 687, 691 n.6 (2007). This sixty-day limitation “is absolute” and a judge “has no power to extend” it. Commonwealth v. Ly, 450 Mass. 16, 20 n.5 (2007). This strict time limit was established long before Nguyen was sentenced. See Commonwealth v. Layne, 386 Mass. 291, 295(1982). It would b e “unquestionably improper” to try to ameliorate the immigration consequences of Nguyen’s guilty plea by allowing a motion to revise and revoke that was filed more than sixty days after sentencing. Commonwealth v. Rezvi, 73 Mass.App.Ct. 299, 300 (2008), rev. denied, 453 Mass. 1102 (2009) (dictum).
Nor would it be appropriate to vacate Nguyen’s lawful conviction in order to ameliorate the impact of subsequent changes to federal immigration law. Vacating a conviction based solely on “concern about immigration effects” would “undermine the principle of separation of powers.” Commonwealth v. Quispe, 433 Mass. 508, 512-13 (2001) (reversing order that dismissed charge based on judge’s concern about immigration consequences of continuance without a finding). Although Quispe reversed an order dismissing a criminal charge,[2] other state and federal courts have applied the same reasoning to reverse orders that vacated lawful guilty pleas or convictions. As one court has explained, “(w]hen a court vacates an otherwise final and valid conviction on equitable grounds merely to avoid the immigration-law consequences of the conviction, it usurps Congress’s plenary power to set the terms and conditions of American citizenship and the [federal] executive’s discretion to administer the immigration laws.” Renteria-Gonzalez v. I.N.S., 322 F.3d 804, 812 (5th Cir. 2002); accord, e.g., State v. Blakesly, 989 A.2d 746, 753 (Maine 2010); United States v. Hovespian, 359 F.3d 1144, 1154-55 (9th Cir. 2004); State v. Cortez, 871 P.2d 660, 662 (Wash.Ct.App.Div. 3 1994); United States v. Johnson, 962 F.2d 579, 582 (7th Cir. 1992); United States v. Holder, 936 F.2d 1, 5 (1st Cir. 1991).
Concerns regarding the separation of state judicial and federal legislative and executive powers are not the only reason why it would be inappropriate to grant Nguyen a new trial solely to avoid adverse "immigration consequences.
In addition, given the strong “public interest in the finality of judgments” in criminal cases, “[n]ew trials should not be granted except for substantial reasons.” Commonwealth v. Tucceri, 412 Mass. 401, 406 (1992). This “principle of finality” trumps any equitable argument that a lawful guilty plea or conviction should be vacated to help a defendant escape “adverse consequences [that were] not contemplated or considered possible at the time of the proceeding.” Commonwealth v. Wheeler, 52 Mass.App.Ct. 631, 638 (2001) (defendant not entitled to new trial twenty-five years after adjudication as juvenile delinquent on statutory rape charge, where defendant brought motion because prior conviction had resulted in nonrenewal of handgun license and consequent loss of job as police officer); accord Commonwealth v. Lopez, 426 Mass. 657, 662-63 (1998) (same as to new trial motion seeking to vacate guilty plea to avoid enhanced sentence imposed for subsequent federal criminal charge).
Finally, the Court notes that granting Nguyen’s motion solely “to aid [him] in avoiding adverse immigration consequences and not because of any procedural or substantive defect in the original conviction” would probably not have the result that Nguyen seeks in any case, because his guilty plea would most likely still be treated as a conviction by federal officials and courts in applying federal immigration law to Nguyen. See Saleh v. Gonzales, 495 F.3d 17, 25 (2d Cir. 2007); accord, e.g., Pickering v. Gonzalez, 465 F.2d 263, 266-67 (6th Cir. 2006); Herrera-Inirio v. I.N.S., 208 F.3d 299, 306-09 (1st Cir. 2000).
ORDER
Defendant’s motion to withdraw his guilty pleas and vacate the judgment entered against him is DENIED.

 For example, a jury would have acquitted Nguyen of assault with intent to rape if it was not convinced beyond a reasonable doubt that he had “a specific intent... at the time of the assault to rape the victim. ” Commonwealth v. Nickerson, 388 Mass. 246, 253 (1983). Similarly, since the victim was 20 years old at the time of the alleged attack and it appears that the Commonwealth was proceeding on a theory of offensive battery, a jury would have acquitted Nguyen on the other two charges if it was not convinced beyond a reasonable doubt that the victim did not consent to being touched by Nguyen. See Commonwealth v. Eberhart, 461 Mass. 809, 818 (2012) (assault and battery); Commonwealth v. Shore, 65 Mass.App.Ct. 430, 431 (2006) (indecent assault and battery).

 The holding in Quispe that a judge may not dismiss criminal charges solely to protect a defendant from immigration consequences of a conviction or guilty plea remains good law. The SJC has abrogated Quispe only to the extent it stated that a trial judge may not “consider the potential immigration consequences in fashioning a sentence,” because that portion of Quispe “was undermined in Padilla when the Supreme Court declined to accept the view that immigration consequences are collateral to conviction.” See Marinho, 464 Mass. at 128 n.19.